NO. 07-04-0031-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 19, 2004
_____

ELAINE STOKVIS,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 222ND DISTRICT COURT OF DEAF SMITH COUNTY;

NO. CR-03F-089; HON. ROLAND SAUL, PRESIDING
_____

Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.

Appellant, Elaine Stokvis, appeals her conviction for possessing a controlled substance. The sole issue before us concerns whether the trial court erred in failing to grant her motion to suppress evidence. The evidence in question was methamphetamine found in her purse (which resulted in her arrest) and drug paraphernalia found in her luggage after her arrest. The initial search was conducted by two Department of Public Safety officers pursuant to consent given by the male driving the pickup truck in which appellant rode as a passenger. We sustain the issue and reverse the judgment.

The pertinent facts are undisputed. Appellant, a female, rode as a passenger in a truck driven by a man known as Shorty. They were stopped between 10 and 11 p.m. on a public road after two DPS officers noticed the car weaving and traveling 35 mph in a 65 mph zone. No one questions the legitimacy of the stop. Nor does anyone question that Shorty gave the officers permission to search the truck, that appellant was outside the truck when the search began, that appellant's purse was on the passenger's seat, that the first officer discovered nothing in the truck, that the second officer began his own search of the vehicle, which search included the opening of appellant's purse and the discovery of methamphetamine therein, and that appellant admitted (after the search) that the purse and drugs were hers. That the purse was appellant's, that appellant was the only female in the truck, and that no one asked her permission to search it is also clear.

Moreover, the only witness to testify at the suppression hearing (*i.e.* the officer who searched the purse) did not know when appellant exited the truck (that is, whether she had left it before Shorty consented to its search), whether anyone told her of the officer's intent to search the vehicle, or whether they told her that Shorty had consented to a search of it.[1] And, when asked if "from the way you recall everything she probably didn't hear the request for consent or the giving of consent by Mr. Esqueda," the officer replied: "[t]hat's correct, sir." This response reconfirmed his earlier statements that he thought the consent

---

[1]The officer did state that it was his "common practice . . . [to] tell the passenger to come on out, that we are going to search the vehicle." Yet, to assign this testimony any weight would require us to infer that appellant was in the car *after* Shorty consented to its search and when the officer attempted to act upon that consent. Yet, the sole witness had already testified that he did not recall where appellant was in relation to the vehicle at the time. So, without knowing whether she was in or out of it, one cannot reasonably infer that the officer acted pursuant to his "common practice" when others are in a car about to be searched. And, this, in turn, denudes the evidence of that practice of all weight.

may have been solicited from Shorty outside the presence of appellant and "[i]t's very possible" that appellant did not hear the officer ask for Shorty's consent.

### Standing

To assess whether the trial court erred in refusing to suppress the evidence, we must first determine whether appellant had standing to contest the search. The State posits that she did not. We disagree.

Standing may be raised at any time. *State v. Klima,* 934 S.W.2d 109, 110-11 (Tex. Crim. App. 1996). Furthermore, whether it exists is a question of law. *Pennywell v. State,* 84 S.W.3d 841, 844 (Tex. App.–Houston [1st Dist.] 2002), *remanded on other grounds,* 125 S.W.3d 472 (Tex. Crim. App. 2003). Finally, to have standing requires the defendant to show not only that he had an expectation of privacy in the property searched but also that the expectation is one that society is prepared to recognize as reasonable. *Jackson v. State,* 745 S.W.2d 4, 7-8 (Tex. Crim. App.), *cert. denied,* 487 U.S. 1241, 108 S.Ct. 2916, 101 L. Ed.2d 947 (1988); *Pennywell v. State,* 84 S.W.3d at 844.

Next, before we can accurately assess whether the two elements were satisfied here, it is imperative to determine the scope of appellant's attack. She does not question the search of the truck but rather that of her purse. Moreover, she admitted that the purse was hers, and nothing of record suggests, in any way, that her male companion claimed it as his or that the officers believed it belonged to anyone other than appellant. Indeed, she was the only female in the truck. And, because a purse is intended as a general repository of personal effects, appellant had a legitimate expectation of privacy in it and its contents. *See Wilson v. State*, 99 S.W.3d 767, 770 (Tex. App.–14th Dist.] 2003, pet. ref'd);

3

*see also Coronado v. State,* 835 S.W.2d 636, 640 (Tex. Crim. App. 1992) (holding that students have a high expectation of privacy in their purses, wallets, letters, and diaries); *Dawson v. State,* 868 S.W.2d 363, 370 (Tex. App.–Dallas 1993, pet. ref'd) (holding that a purse is an item in which most women carry personal items and cash and the fact that the defendant stored her purse in her locker and placed a lock on the locker is evidence she intended to exclude others from the locker).

Additionally, that the owner left her purse in a vehicle owned by a third party does not *ipso facto* negate the existence of her privacy interest in it. *See May v. State,* 582 S.W.2d 848, 852 (Tex. Crim. App. 1979) (holding that consent of the passenger to search the vehicle which belonged to his parents did not extend to a lunch box which the officer knew belonged to the defendant). This is especially so when the record is bereft of evidence illustrating that the defendant intended to abandon or otherwise relinquish her interest in the property. Such is the case here.

Again, the record indisputably reveals that the purse was located on the passenger seat whereat appellant sat before the stop, that she never journeyed from the vicinity of the truck (and, therefore, her purse) once she stepped from it, that she claimed the purse as hers, and that she never gave her consent to its search. Moreover, nothing of record suggests, much less illustrates, that appellant knew what, if anything, the officers were doing when entering the truck or that Shorty had given them permission to search the vehicle. And, without proof that she left her purse in the vehicle while having the aforementioned knowledge, one cannot reasonably infer that the act of leaving the purse in the vehicle evinced some indicia of intent to relinquish her expectation of privacy in it.

4

Nor is this court prepared to say that a female must either carry her purse on her person at all times or place it under lock and key as a condition of retaining her privacy interest.

In short, we conclude, as a matter of law, not only that appellant had a legitimate expectation of privacy in her purse but also that society (and the law) actually has deemed that interest reasonable. So, appellant had standing to contest the search of her purse.

### *Legitimacy of Search*

Next, we address the legitimacy of the search. Again, it was based upon consent, and no one argues otherwise. Furthermore, the record indisputably illustrates that the officers asked Shorty for consent to search the vehicle; never was appellant asked for permission to search her purse. Similarly unquestionable is that appellant was the only female in the truck, that the purse was located atop the portion of the seat on which she sat, that no evidence of record suggests Shorty carried a purse or wore feminine garb, that no evidence suggests Shorty exerted or claimed to exert some aspect of control over or an interest in the purse, and that appellant claimed ownership of the purse. Under these circumstances, we cannot but say that the search of the purse was improper.

It is true that third parties may give consent to search the property of another. But, for the consent to be valid, the third party must have standing to dispute the search; and, that is something the State must prove. *May v. State*, 582 S.W.2d at 851. In other words, the State must establish that the third party had a legitimate expectation of privacy in or had authority to jointly use the item searched. *Id.*; *accord Maxwell v. State*, 73 S.W.3d 278, 281-82 (Tex. Crim. App. 2002) (stating that third persons may give valid consent to search when they exercise equal control over and have authority to use the premises being searched); *Boyle v. State*, 820 S.W.2d 122, 143 (Tex. Crim. App. 1989), *cert. denied,* 503

5

U.S. 921, 112 S.Ct. 1297, 117 L.Ed.2d 520 (1992) (holding the same and recognizing that the rule is applicable to motor vehicle searches as well). If it fails in that regard, then the search cannot be justified on the basis of consent. And, since the State failed to prove here that Shorty had a legitimate privacy interest in, exercised equal control over, or had the authority to jointly use the purse, the officers could not use his consent to justify their search of it. *May v. State*, 582 S.W.2d at 851-52.

Consequently, we hold that the trial court abused its discretion in denying appellant's motion to suppress. And, given that the improper search resulted in the discovery of the contraband underlying her conviction, we are unable to say, beyond reasonable doubt, that the trial court's decision was harmless. So, its order denying appellant's motion to suppress and its judgment manifesting appellant's conviction are reversed, and the cause is remanded for further proceedings.


Brian Quinn
Justice


Publish.